# Third District Court of Appeal

## State of Florida

Opinion filed February 9, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1086
Lower Tribunal No. 18-14161
_____

**Gregorio Antonio Dickson,**
Appellant,

vs.

**Gretchen Curtis, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Samantha Ruiz Cohen and Christina Marie DiRaimondo, Judges.

Rhonda F. Goodman, P.A., and Rhonda F. Goodman, for appellant.

Holland & Knight LLP, and Stacy D. Blank and Jessica S. Kramer (Tampa), for appellee.

Before EMAS, HENDON, and BOKOR, JJ.

HENDON, J.

Gregorio Antonio Dickson ("Respondent") appeals from (1) the January 22, 2020 Order on Petition for Injunction for Protection Against Domestic Violence ("Order"), entering a domestic violence injunction for a one-year period until January 22, 2021, pursuant to section 741.30, Florida Statutes; and (2) the order denying his motion for rehearing and/or new trial. We affirm.

## I. Facts and Procedural History

On June 14, 2018, Gretchen Curtis ("Ms. Curtis"), o/b/o her minor son, Ryan Gregory Dickson ("Ryan" or "Petitioner"),[1] filed a sworn Petition for Injunction for Protection Against Domestic Violence Without Children against the Respondent under section 741.30 ("Petition"). The Petition provides that Ryan is either the victim of domestic violence or has a reasonable cause to believe he is in imminent danger of becoming a victim of domestic violence because, among other things, the Respondent, who is Ryan's father:

> a. Committed or threatened to commit domestic violence defined in s. 741.28, Florida Statutes, as any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any other criminal offense resulting in injury or death of one family or house member by another.
>
> b. Previously threatened, harassed, stalked, or physically

---

[1] Ryan turned eighteen in August 2019.

2

abused the petitioner.

. . . .

f. Used, or has threatened to use, against the petitioner any weapons such as guns or knives.

The Petition provides, in relevant part, that on July 14, 2017, the Respondent physically abused Ryan in front of his younger siblings and the Respondent's friends. More specifically, the Respondent punched Ryan's head and body and then went into his room to retrieve a weapon. The Respondent returned with the weapon, cocked the weapon, placed it to Ryan's head, made a negative comment to Ryan, and then pulled the trigger. Ryan ran from where he was at and went to his mother's home. Further, although the incident occurred on July 14, 2017, it was not until May 23, 2018, that Ryan revealed to his mother, Ms. Curtis, that the Respondent put a weapon to his (Ryan) head and pulled the trigger.

The trial court entered a temporary injunction. Over several days, the trial court conducted an evidentiary hearing on the Petition, hearing testimony from Ryan, Ms. Curtis, the Respondent, and individuals who were present during the incident, including the Respondent's friends and other children. The Respondent and his counsel were present at the evidentiary hearings.

On November 19, 2019, the trial court reviewed and then rejected

3

proposed final orders presented by the parties. The trial court directed the parties to prepare and submit amended proposed final orders. At the commencement of the hearing conducted on January 22, 2020, the trial court ruled as follows:

> After hearing the testimony of each party present and all witnesses called by each side, the Court finds based on the specific facts of this case that the Petitioner is a victim of domestic violence and has reasonable cause to believe that he is in imminent danger of becoming a victim of domestic violence by the Respondent.

The trial court informed the parties that it will enter a final order that same day with specific factual findings, and that the injunction shall be in effect for a one-year period until January 22, 2021. At the hearing, the trial court ruled that Ryan is the victim of domestic violence by the Respondent; the Respondent committed an act of child abuse on Ryan; on July 14, 2017, the Respondent committed an act of battery when he grabbed Ryan in a headlock and tried to shove him to the ground using excessive force to reprimand Ryan; the Respondent committed an act of aggravated assault when the Respondent put a gun to Ryan's forehead and pulled the trigger; and the Petitioner met his burden of proving an act of domestic violence by the preponderance of the evidence.

On January 22, 2020, the trial court entered both the Order and the Final Judgment of Injunction for Protection Against Domestic Violence. In

the Order, the trial court noted that Ryan's testimony was consistent and credible. The trial court set forth Ryan's testimony. The trial court noted that, following the July 14, 2017 incident, his mother, Ms. Curtis, saw that Ryan's shirt was torn. Ryan started to explain to his mother that the Respondent put him (Ryan) in a choke-hold, but Ms. Curtis was becoming upset. Ryan did not tell Ms. Curtis about the firearm or any further details about the incident because he was concerned about how she would react. Following this incident, he did not visit the Respondent again. Several months later, Ms. Curtis told Ryan that he had to go to the Respondent's home, and it was then that Ryan told Ms. Curtis about the firearm incident that occurred on July 14, 2017. The trial court also found that Ms. Curtis's testimony was credible and consistent, and that her testimony as to Ryan's revelation about the firearm was consistent with Ryan's testimony.

The Order reflects that the Respondent testified that Ryan's sister notified the Respondent that Ryan was going to hurt Ryan's younger brother, Lucas. The Respondent exited the house and saw Ryan holding Lucas by the arm. The Respondent admitted that he got angry, "manhandled" Ryan, held him down, called Ryan names, and placed his hands around Ryan's neck until other adults who were present separated Ryan and the Respondent. The Respondent, however, denied pointing a

5

firearm at Ryan or having any firearms in his home on July 14, 2017.

The trial court heard testimony from several adults who were present during the incident. Among other things, they all testified that they did not see the Respondent with a firearm on the day of the incident. The trial court found that they were not credible. Further, the trial court heard testimony from children who were present on the date of the incident. The trial court found that the children were unreliable because, based on their demeanor, it appeared they had spoken with adults about their testimony.

In its Order, the trial court made the following determinations consistent with its oral rulings: Ryan is a victim of domestic violence by the Respondent; the Respondent committed an act of child abuse on Ryan; on July 14, 2017, the Respondent committed an act of battery when he grabbed the Petitioner in a headlock and tried to shove him to the ground using excessive force to reprimand Ryan; the Respondent committed an act of aggravated assault when he retrieved a gun, put it to Ryan's forehead, and pulled the trigger; and Ryan met his burden of proving an act of domestic violence by a preponderance of the evidence. Paragraph 24 of the Order provides that, based on these findings, the trial court was entering "an indefinite Final Judgment of Injunction for Protection Against Domestic Violence on behalf of Ryan Gregory Dickson." (emphasis added).

6

However, immediately thereafter, the Order provides that the injunction was "granted for <u>one year period until January 22, 2021</u>." (underlining added).

On January 31, 2020, the Respondent filed a motion for rehearing and/or new trial, which was denied on April 9, 2021. The Respondent's timely appeal followed.

## II. Analysis

A.  _Whether the trial court acted in excess of its jurisdiction or violated the Respondent's right to adequate notice and due process?_

The Respondent contends that the trial court acted in excess of its jurisdiction under section 741.30 and violated his right to adequate notice and due process by finding that the Respondent committed acts of child abuse, battery, and aggravated assault, because the only relief sought in the Petition was a determination that based on the Respondent's acts, Ryan was a victim of domestic violence or has reasonable cause to believe he is in imminent danger of becoming a victim of domestic violence under section 741.30(1)(a). We disagree.

Section 741.30(1)(a) provides that there is a cause of action for an injunction for protection against domestic violence if a family or household member is a "victim of domestic violence as defined in s. 741.28 or has reasonable cause to believe he or she is imminent danger of becoming the victim of any act of domestic violence." Section 741.28(2) defines

7

"domestic violence" as "assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member." Further, in addition to alleging that the Respondent committed or threatened to commit domestic violence," the Petition alleged that the Respondent "previously threatened, harassed, stalked, or physically abused the petitioner." Thus, based on the allegations set forth in the Petition, the trial court did not exceed its jurisdiction or violate the Respondent's right to adequate notice and due process by finding that he committed acts of child abuse, battery, and aggravated assault.

## B. *Whether the trial court delegated its decision-making authority?*

Next, the Respondent argues that trial court delegated its decision-making authority by adopting the Petitioner's amended proposed judgment. We disagree.

In Perlow v. Berg-Perlow, 875 So. 2d 383 (Fla. 2004), the Florida Supreme Court did not prohibit a trial judge from adopting verbatim the proposed order of one of the parties. However, the Court did caution that a party's proposed order "cannot substitute for a thoughtful and independent analysis of the facts, issues, and law by the trial judge." Id. at 390. In

8

Perlow, the trial judge adopted verbatim the proposed order of one party without giving the other party an opportunity for comments or objections. In reversing the order under review, the Florida Supreme Court stated:

> When the trial judge accepts verbatim a proposed final judgment submitted by one party without an opportunity for comments or objections by the other party, there is an appearance that the trial judge did not exercise his or her independent judgment in the case. This is especially true when the judge has made no findings or conclusions on the record that would form the basis for the party's proposed final judgment. This type of proceeding is fair to neither the parties involved in a particular case nor our judicial system.

Id. (footnote omitted). Further, the Court provided guidance to trial judges when requesting proposed orders:

> (1) the trial judge may ask both parties or one party to submit a proposed final judgment; (2) if proposed final judgments are filed, each party should be given an opportunity to review the other party's proposed final judgment and make objections; (3) if only one party submits a proposed final judgment, there must be an opportunity for review and objections by the opposing party; and (4) prior to requesting proposed final judgments, the trial judge should, when possible, indicate on the record the court's findings of fact and conclusions of law.

Id. at 384.

In the instant case, the trial court rejected the initial proposed orders submitted by the parties, and then requested both parties to submit amended proposed orders. Further, the trial court did not adopt verbatim Petitioner's amended proposed order. Instead, the trial court made several

9

changes, including a significant change—the trial court did not accept the Petitioner's request for an indefinite injunction, and instead, entered an injunction for a one-year period. Therefore, the record before this Court does not reflect that the trial court delegated its decision-making authority when adopting portions of the Petitioner's amended proposed order.

C. *Whether the incident of domestic violence was too remote in time to support the entry of the domestic violence injunction?*

Finally, the Respondent contends that the trial court abused its discretion by entering the injunction because the sole domestic violence incident occurred eleven months prior to the filing of the Petition, and therefore the incident was too remote in time to support the entry of the domestic violence injunction. Under the circumstances of this case, we disagree.

Florida courts have found that the remoteness of a prior act of domestic violence or abuse may render the entry of a domestic violence injunction improper. There does not appear to be a bright line rule as to what would be considered too remote in time to support the entry of a domestic violence injunction. However, in Curl v. Roberts ex rel. E.C., 279 So. 3d 765 (Fla. 1st DCA 2019), the First District Court of Appeal held: "Incidents remote in time by as little as a year are insufficient to support entry of a new injunction, absent allegations of current violence or imminent

10

danger that satisfy the statute." Curl, 279 So. 3d at 767 (emphasis added); see also McGuire v. Boscan, Case No. 3D20-1419, 46 Fla. L. Weekly D2573 (Fla. 3d DCA Dec. 1, 2021) (reversing entry of domestic violence injunction based on remoteness where last alleged domestic violence incident occurred in September 2017 and the petition for protection against domestic violence was filed in March 2020); Magloire v. Obrenovic, 308 So. 3d 258, 261 (Fla. 2d DCA 2020) ("[The petitioner's] testimony established that she was the victim of violence in early 2018, including while she was pregnant. However, those incidents predated the filing of the petition by well over a year and were thus too remote in time to support the entry of the injunction in the absence of more recent evidence of domestic violence or evidence of that [the petitioner] has reasonable cause to believe that she and her child are in imminent danger."); Gill v. Gill, 50 So. 3d 772, 774 (Fla. 2d DCA 2010) ("[A]n isolated incident of domestic violence that occurred years before a petition for injunction is filed will not usually support the issuance of an injunction in the absence of additional current allegations.").

In the instant case, the Petition was filed eleven months after the incident of domestic violence occurred. Ryan, who was a minor when the incident occurred, did not inform his mother, Ms. Curtis, that the Respondent placed a firearm to Ryan's head and pulled the trigger. Ryan's

11

delay in telling his mother was due to his concern as to how she would react. After Ryan told his mother about the firearm, Ms. Curtis filed the Petition on behalf of Ryan three weeks later. Under the circumstances of this case, we conclude that the July 14, 2017 incident of domestic violence was not too remote in time to support the entry of the domestic violence injunction.

## III. Conclusion

Based on the above analysis, we affirm the entry of the Order, but remand for the sole purpose of correcting the scrivener's error in Paragraph 24 of the Order to reflect that the domestic violence injunction was entered for a one-year period until January 22, 2021, not indefinitely.

Affirmed; remanded for correction of scrivener's error.